STATE OF NORTH CAROLINA v. LAWRENCE J. BIGGERSTAFF

No. 7225SC613

(Filed 20 September 1972)

1. Constitutional Law § 31; Criminal Law § 40— testimony from prelimi-
   nary hearing — unavailability of witness — finding of good faith
   effort by State

   It was not necessary for the trial judge to make a direct finding
   that the State had exerted good faith efforts to secure the presence
   of a witness at defendant's trial for first-degree murder where the
   judge's order finding facts after the *voir dire* hearing and evidence
   upon which the order was based did disclose a good faith effort;
   hence, it was not error for the trial court to allow into evidence
   the witness's transcribed testimony given at defendant's preliminary
   hearing.

2. Criminal Law § 88— cross-examination of State's witness — bias of
   witness — improper exclusion of testimony

   Where a witness was unavailable for cross-examination at trial,
   but a transcript of her testimony at defendant's preliminary hearing
   was read into evidence, the trial court improperly sustained objections
   to questions asked the sheriff, a State's witness, by defendant's
   counsel in an attempt to show that the witness was biased in that
   she was in custody on a felony charge at the time she testified and
   hence in such a position that she might have felt it advisable to curry
   favor with the State.

3. Criminal Law § 88— cross-examination — bias of witness in favor of
   State — exclusion of testimony within discretion of court

   The rule which recognizes the propriety of cross-examination to
   establish a witness's bias in favor of the State because of his hope for
   leniency must be applied in connection with the equally well recognized
   rule that the legitimate bounds of cross-examination are largely
   within the discretion of the trial judge, so that his ruling will not be
   held as prejudicial error absent a showing that the verdict was im-
   properly influenced thereby.

4. Criminal Law § 87— leading questions — discretion of trial judge

   The allowance of leading questions is a matter within the discre-
   tion of the trial judge, and his rulings will not be disturbed on
   appeal in the absence of abuse of discretion.

5. Criminal Law § 169— exclusion of testimony — harmless error

   Testimony of a witness that the deceased was "very mad" was
   improperly excluded; however, defendant was not prejudiced where
   the witness had already testified without objection that the deceased
   "was mad really."

ON *Certiorari* to review judgment of *Martin (Robert M.)*, *Judge*, at the 16 August 1971 Session of Superior Court held in CALDWELL County.

On the night of 21 January 1971 defendant shot and killed Jerry Ray Bryant. He was indicted for first-degree murder, was placed on trial for second-degree murder or manslaughter, pleaded not guilty, was found guilty of manslaughter, and from judgment imposing a prison sentence, gave notice of appeal to the Court of Appeals. This Court subsequently allowed his petition for certiorari.

*Attorney General Robert Morgan by Associate Attorney Edwin M. Speas, Jr. for the State.*

*West & Groome by Ted G. West and J. Laird Jacob, Jr. for defendant appellant.*

PARKER, Judge.

[1] At defendant's preliminary hearing in the district court held on 15 March 1971 the State presented testimony of Mrs. Peggy Story, an eyewitness to the shooting. At that hearing defendant was present and was represented by the same counsel who subsequently represented him at his trial, and defendant's counsel cross-examined the witness. Mrs. Story's testimony given at the preliminary hearing on direct and cross-examination was transcribed by the court reporter. At defendant's trial in the superior court held in August 1971, Mrs. Story was not present, and the trial court permitted the court reporter, over defendant's timely objections made on constitutional grounds, to read to the jury the transcript of her testimony as given at defendant's preliminary hearing. Defendant contends this resulted in violation of his rights to be confronted with the witnesses against him as secured to him by Art. I, § 23 of the Constitution of North Carolina and by the Sixth Amendment to the Constitution of the United States, made obligatory on the States by the Fourteenth Amendment under the decision in *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923. More specifically, defendant contends that the State in this case failed to show a sufficient good faith effort to secure the witness's presence at his trial, as required by *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed. 2d 255 and *Berger v. California*, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.

2d 508, to justify the use at trial of her preliminary hearing testimony. We do not agree.

In *State v. Prince,* 270 N.C. 769, 154 S.E. 2d 897, in opinion filed 20 June 1967, Sharp, J., speaking for the North Carolina Supreme Court, said:

> "Always in a criminal action, 'the witness himself, if available, must be produced and testify *de novo.' State v. Cope,* 240 N.C. 244, 249, 81 S.E. 2d 773, 777. The constitutional right of confrontation, however, is not denied an accused by the introduction at a subsequent trial of the transcribed testimony given at a former trial of the same action by a witness who has since died, become insane, left the State permanently or for an indefinite absence, become incapacitated to testify in court as a result of a permanent or indefinite illness, or absented himself by procurement of, or connivance with, the accused. The accuracy of the transcription, of course, must be attested and it must appear that the defendant had a reasonable opportunity to cross-examine the witness."

Subsequent to the decision of *State v. Prince, supra,* and on 23 April 1968, the United States Supreme Court decided *Barber v. Page, supra,* in which the Court held that the absence of a witness from the jurisdiction would not justify use at trial of preliminary hearing testimony unless the state had made a good faith effort to secure the witness's presence at trial. In *Berger v. California, supra,* decided 13 January 1969, the Court held that the principle of *Barber* should be given retroactive application. In both cases, on the facts disclosed by the records before the Court, the United States Supreme Court found that the prosecution had failed to show a sufficient good faith effort to obtain the witness's presence at the trial to justify use of his prior testimony. The principal question before us on the present appeal is whether the record in the present case does disclose such a sufficient good faith effort on the part of the prosecution. We hold that it does.

Prior to permitting the transcript of the testimony given by Mrs. Story at the preliminary hearing to be read to the jury, the trial court conducted a *voir dire* examination concerning the circumstances under which her presence at the preliminary hearing had been obtained and concerning the efforts which the State had made to obtain her presence at defendant's trial.

Evidence presented at the *voir dire* examination disclosed that Peggy Story was a young woman 23 years old who for the past three or four years had worked at various locations as a dancer. She had been married but for over two years had been divorced from her husband. At the time of the shooting she and her three children lived with her mother in Caldwell County, N. C. In March of 1971, after the shooting but before defendant's preliminary hearing, she went to Florida with one Roger Mills and was charged with aiding and abetting Mills in larceny of an automobile. She was arrested on this charge at Myrtle Beach, S. C., and about 12 March 1971 was brought back by the officers to Caldwell County, N. C., where she appeared as a State's witness at defendant's preliminary hearing on 15 March 1971. Subsequently the charges against her of aiding and abetting Roger Mills in larceny of an auotmobile, which had been brought by Mills' mother, were dropped. She was last seen in North Carolina on 5 May 1971, on which date she and her three children were still living with her mother. About 7:30 p.m. on that date she left home to go to a filling station to have a battery checked on her girl friend's automobile, telling her mother she would be back in a few minutes. Since that time her mother had not seen her and at the time of defendant's trial in August of 1971 her mother did not know where she was. Her mother had heard from her once, on 24 June 1971, when she telephoned about 2:30 in the morning to ask about her children. At that time her mother asked where she was, but she did not say. The last information which her mother had was from a girl friend of Peggy's, who told her that she was in San Juan, Puerto Rico. Her father testified that on previous occasions Peggy had left her children with her mother and on such occasions he had not known where she was; that since 5 May 1971 he had not seen her, she had not even called him, and he did not know her whereabouts; that "[t]hey (without specifying to whom he referred) heard she was in Reno here a week or two ago." The Sheriff of Caldwell County testified he had been unable to serve subpoenas on Peggy Story issued for the May and August sessions of superior court; that he and his deputies had talked to members of her family and friends and with other witnesses in the case and had no information concerning her whereabouts; that he and his deputies had made "a diligent effort to ascertain the whereabouts of Peggy Green Story both in Caldwell County and in the State

of North Carolina," and it was his opinion she had left "the jurisdiction of this Court."

On the evidence presented at the *voir dire* hearing the trial judge entered an order finding facts substantially as follows: That the sheriff had made diligent inquiry as to the whereabouts of the witness and had found no evidence as to where she may be residing, if she be living; that the witness was a necessary witness for the prosecution, having been an eyewitness to the shooting; that the proceeding at which the witness testified was a preliminary stage of the same trial; that the witness had removed herself from the jurisdiction of the court and was unavailable to testify at the trial; and that the court reporter had accurately taken and transcribed her testimony given at the preliminary hearing. While the trial judge did not make a direct finding that the State had exerted good faith efforts to secure the presence of the witness at the trial, we are of the opinion, and so hold, that his order and the evidence upon which it was based do disclose such a good faith effort in this case. Accordingly, we find no error in the trial court's ruling that the witness's transcribed testimony given at the preliminary hearing was admissible at defendant's trial. We note, in passing, that the witness, Peggy Story, was not the only eyewitness to the shooting. Three other witnesses, one for the State and two for the defendant, had been present in the room when the fatal shots were fired and testified to the shooting and to the events which led to it. Defendant's assignments of error directed to the admission in evidence of Peggy Story's transcribed testimony are overruled.

[2, 3] At the trial, defendant's counsel in cross-examination of the sheriff, who was a State's witness, asked questions designed to place before the jury the fact, which had been previously disclosed on cross-examination of the same witness during the *voir dire* examination, that at the time Peggy Story testified at the preliminary hearing she was in custody of the sheriff's department on a felony charge for which a deputy had brought her back to Caldwell County from Myrtle Beach, S. C. The court sustained the solicitor's objections to these questions, which action is the subject of defendant's exceptions 10, 11, 12 and 13, brought forward on this appeal in assignment of error number 4. In our opinion the evidence sought was admissible, since defendant had a right to attempt to impeach Peggy Story, whose preliminary hearing testimony had been admitted against

him, but its exclusion in this case was nonprejudicial error. This is not a case in which it was sought to impeach a witness by cross-examination as to whether he had been indicted or was under indictment for an unrelated criminal offense, which the Court held in *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174, may not be done on the grounds that an indictment is a mere accusation and raises no presumption of guilt. Here, the excluded evidence was not sought by defendant for the purpose of showing that Peggy Story may have been guilty of a felony and was therefore a person of bad character who was unworthy of belief. Rather, the evidence was sought in order to disclose to the jury the fact that at the time Peggy Story testified at the preliminary hearing she was in such a position that she might have felt it advisable to curry favor with the State. See, e.g., *State v. Roberson*, 215 N.C. 784, 3 S.E. 2d 277; Annot., 62 A.L.R. 2d 610. True, defendant's counsel had an opportunity to develop this evidence by cross-examination of Peggy Story at the preliminary hearing, but it would be unrealistic not to recognize that cross-examination of State's witnesses at a preliminary hearing is usually conducted for a very different purpose than is cross-examination of the same witnesses at the trial before a jury, and here defendant's counsel had no way of knowing at the time of the preliminary hearing that the witness would not be available for a more searching cross-examination before the jury. Since Peggy Story was not subject to cross-examination before the jury, it would have been proper for defendant in this case to have been permitted to develop by cross-examination of another witness for the State facts bearing on Peggy Story's possible motive for testifying favorably to the State's case. The rule, however, which recognizes the propriety of cross-examination to establish a witness's bias in favor of the State because of his hope for leniency, "must be applied in connection with the equally well recognized rule that the legitimate bounds of cross-examination are largely within the discretion of the trial judge, so that his ruling will not be held as prejudicial error absent a showing that the verdict was improperly influenced thereby." *State v. Chance*, 279 N.C. 643, 185 S.E. 2d 227. In the present case there was no such showing, and defendant's exceptions 10, 11, 12 and 13 are overruled.

The only other exception included under assignment of error number 4 which is brought forward in defendant's brief

is exception number 22, relating to the court's action in sustaining the solicitor's objection to a question asked the sheriff on cross-examination concerning the description of an automatic pistol on which the S.B.I. had made certain ballistic tests. The sheriff had previously testified that this pistol, which had been found by deputies in Burke County, was not the weapon which fired the shot which killed the deceased. No evidence indicated any connection between this weapon and the homicide in this case, and the excluded evidence was clearly irrelevant. All of defendant's exceptions included under his assignment of error number 4 which are brought forward in his brief are accordingly overruled.

[4] Defendant assigns as error the court's permitting the solicitor to ask the sheriff certain questions which defendant contends were leading questions. "The allowance of leading questions is a matter entirely within the discretion of the trial judge, and his rulings will not be disturbed on appeal, at least in the absence of abuse of discretion." *State v. Painter*, 265 N.C. 277, 144 S.E. 2d 6. No abuse of discretion has been shown on the present record, and this assignment of error is overruled.

[5] Defendant's counsel asked a defense witness, who was present when the altercation between defendant and Jerry Bryant occurred, to describe the expression on Jerry Bryant's face and what he looked like. The witness answered that in his opinion Bryant was "very mad." The State's motion to strike the answer was allowed, to which action defendant assigns error. The answer was competent and should not have been stricken. *State v. Moore*, 276 N.C. 142, 171 S.E. 2d 453; *State v. Brown*, 204 N.C. 392, 168 S.E. 532. However, defendant suffered no prejudice; the witness had already testified without objection that Jerry Bryant "was mad really," and that he had threatened to kill the defendant. Accordingly, this assignment of error is also overruled.

No error.

Judges VAUGHN and GRAHAM concur.